# A. J. BOSSHARD v. COUNTY OF STEELE.[1]

December 31, 1927.

No. 26,333.

**If plaintiff has been party to an illegal agreement, he may recover if he can make out his case without reference to that agreement.**

An agreement will be enforced, even if it is incidentally or indirectly connected with an illegal transaction, if plaintiff will not require the aid of the illegal transaction to make out his case.

Contracts, 13 C. J. p. 502 n. 57; p. 504 n. 66 New.

See 6 R. C. L. 821; 3 R. C. L. Supp. 213; 4 R. C. L. Supp. 443; 5 R. C. L. Supp. 370.

Defendant appealed from a judgment of the district court for Steele county, Enersen, J. Affirmed.

*Harold S. Nelson,* for appellant.

*Charles Spillane,* for respondent.

WILSON, C. J.

Action for money paid for the use of defendant, which appeals from the judgment.

In January, 1924, plaintiff was appointed treasurer of Steele county to fill a vacancy caused by death. The county board, as a condition of the appointment, agreed that the county would pay the premium on the first $50,000 of plaintiff's official bond and exacted a promise from him to "take care of the premium on the balance." That agreement was performed during the years 1924 to 1926, inclusive. The purpose of this suit is to recover the premiums paid by plaintiff, his position being that it was the statutory duty of the county to pay them.

An agreement will be enforced, even if it is incidentally or indirectly connected with an illegal transaction, if plaintiff will not require the aid of the illegal transaction to make out his case. 13

[1]Reported in 217 N. W. 354.

C. J. 502, § 445; 6 R. C. L. 821, § 217; Eagle Roller-Mill Co. v. Dillman, 67 Minn. 232, 69 N. W. 910; Disbrow v. Creamery Pkg. Mfg. Co. 110 Minn. 237, 125 N. W. 115; Bodenhofer v. Hogan, 142 Iowa, 321, 120 N. W. 659, 134 A. S. R. 418, 19 Ann. Cas. 1073; Pitsch v. Continental & Com. Nat. Bank, 305 Ill. 265, 137 N. E. 198, 25 A. L. R. 164; Sewell v. Norris, 128 Ga. 824, 58 S. E. 637, 13 L.R.A.(N.S.) 1118; Wald v. Wheelon, 27 N. D. 624, 147 N. W. 402; Kennedy v. Lonabaugh, 19 Wyo. 352, 117 P. 1079, Ann. Cas. 1913E, 133.

Every fact pleaded in the complaint is admitted in the answer, which alleged the illegal contract as a specific defense. Plaintiff's proofs showed that he was the county treasurer. The minutes of the county board showing the appointment made no reference to the illegal agreement, which seems to have been a separate or side agreement as a condition to his appointment. The records show an unconditional legal appointment. He paid $1,350 as premium on his bond. All but a small portion of the amount should have been paid by the county. G. S. 1923, § 840. He showed facts from which liability was established. He did this independently of the illegal contract. He did not call to his assistance the illegal contract which was brought into the case and used by defendant as a shield. The plaintiff does not seek to enforce the illegal contract. Upon the facts admitted and established, without reference to the illegal agreement, and upon the statute he has established a cause of action and is entitled to recover. In the absence of the illegal side agreement his claim could not be questioned. He has neither required nor used the illegal agreement. His cause of action is complete without it. Perhaps the county was induced to make a valid contract by the illegal agreement, but if plaintiff cannot recover there is not much left of the general rule which has been quite uniformly recognized by the authorities.

Affirmed.

STONE, J. (dissenting).

I dissent because I think the rule upon which the majority stand is being misapplied. It is that a plaintiff may recover in a proper

case, although he has been party to an illegal agreement, if he can make out a cause of action without reference to that agreement. That rule is established here by our decisions, among others Eagle Roller-Mill Co. v. Dillman, 67 Minn. 232, 69 N. W. 910; Disbrow v. Creamery Pkg. Mfg. Co. 110 Minn. 237, 125 N. W. 115. The limitations of the rule are well illustrated in both of those cases.

The first was upon a fidelity bond. The defense was that in the grain business in which the agent was employed the law required the use of weights and measures "proved and sealed" and that it had been conducted by the aid of weights and measures not so "proved and sealed." Violation of law was clear. But it was no defense to a suit upon a contract which was wholly independent of the unlawful act. Both the contract of employment and the bond were legal, and neither "provided for or contemplated the doing of anything illegal." The illegal use of unauthorized weights and measures, the court said, did not "form any link in plaintiff's chain of title to the grain or the money, or constitute any part of its cause of action. Neither is the plaintiff dependent on it for the purpose of making out its claim against the defendants. This, we think, furnishes the correct test whether the illegal act alleged constitutes a defense."

In the Disbrow case, 110 Minn. 237, 125 N. W. 115, the suit was on contract and in part for the recovery of money. The defense was that certain of the patents involved had been fraudulently obtained. Plaintiff being a party to the fraud, it was said that if the action had arisen "solely under those patents" the plaintiff could not recover. But there was more to the case, and the court went on to mention that "before these illegal acts were performed" there had been "a perfectly valid agreement" under which a "claim could be established without recourse to the illegal transaction," and that therefore the plaintiff's case fell "under that line of authorities which hold that where the claim is not dependent upon an illegal or unlawful transaction, it will not be defeated merely because in the course of the business the plaintiff and defendant together committed acts which were illegal."

The instant case is very different, for here plaintiff cannot recover without reference to his illegal contract, for the thing upon which he bases his right to recover is his performance of that very contract. Plaintiff's legal status is precisely that which a losing gambler would occupy if after paying his loss at cards he should sue to recover it as his money had and received by the defendant. He would plead and prove the payment without suggesting illegality and that he never received any consideration. But he could not recover if defendant came forward with pleading and proof of the· real transaction and the whole of it. In such case as in this one, the payment "grew immediately out" of the illegal transaction, is a part thereof, and "inseparably tied to it." Bothwell v. Buckbee, Mears Co. —— U. S. ——, 48 S. Ct. 124, 72 L. ed. 136, affirming 166 Minn. 285, 207 N. W. 724.

The philosophy of the law's repudiation of illegal contracts was recently considered here in Goodrich v. Northwestern Tel. Exch. Co. 161 Minn. 106, 201 N. W. 290. The proposition is not, in the final analysis, that illegality is a defense. It is rather the simple refusal of the law to rescue its violators from the consequences of their own wrong. Whenever and however illegality appears to the court, its duty is to stop the inquiry, leave the parties where they are, and decline to assist either in escaping the consequences of his own wrongdoing. Hence no court should lend its aid in undoing the performance of an illegal contract so far as the same has been executed. The rule applies of course only where the parties are in pari delicto, and there is no suggestion that those now before us are otherwise.

This court has held that there can be no recovery, quasi ex contractu, of money paid under a contract in violation of the federal land laws, The St. Peter Co. v. Bunker, 5 Minn. 153 (192); of property obtained by compounding a felony, both parties being equally guilty, Taylor v. Blake, 11 Minn. 170 (255); for services in threshing grain with apparatus not equipped with certain guards required by statute, Ingersoll v. Randall, 14 Minn. 304 (400); of money paid on a gambling debt, Franklin v. Stoddart, 34 Minn. 247, 25 N. W. 400; by an unlicensed broker of his commissions, Buckley

v. Humason, 50 Minn. 195, 52 N. W. 385, 16 L. R. A. 423, 36 A. S. R. 637; of money paid under an executed illegal contract, Leveroos v. Reis, 52 Minn. 259, 53 N. W. 1155; nor of money loaned for an illegal purpose, the lender participating therein, Johnstown Land Co. v. Brainerd Brg. Co. 142 Minn. 291, 172 N. W. 211. We have refused to cancel a deed given for an illegal purpose. Iverson v. Iverson, 140 Minn. 157, 167 N. W. 483. For other cases in point, see 2 Dunnell, Minn. Dig. (2 ed.) § 1885.

In Gibbs & Sterrett Mfg. Co. v. Brucker, 111 U. S. 597, 601, 4 S. Ct. 572, 28 L. ed. 534, it is stated as an "elementary principle that one who has himself participated in a violation of law cannot be permitted to assert in a court of justice any right founded upon or growing out of the illegal transaction." See also Harriman v. Northern Sec. Co. 197 U. S. 244, 25 S. Ct. 493, 49 L. ed. 739; Dent v. Ferguson, 132 U. S. 50, 10 S. Ct. 13, 33 L. ed. 242; Lanham v. Meadows, 72 W. Va. 610, 78 S. E. 750, 47 L.R.A.(N.S.) 592; and cases referred to concerning "rights under executed contract," 45 A. L. R. 1406.

Probably no improvement has yet been made upon the statement of Lord Mansfield in Holman v. Johnson, Cowp. 341, 343:

"The principle of public policy is this: *ex dolo malo non oritur actio*. No court will lend its aid to a man who founds his cause of action upon an immoral or an illegal act. If, from the plaintiff's own stating or otherwise, the cause of action appears to arise *ex turpi causa*, or the transgression of a positive law of this country, there the court says he has no right to be assisted. It is upon that ground the court goes; not for the sake of the defendant, but because they will not lend their aid to such a plaintiff. So if the plaintiff and defendant were to change sides, and the defendant was to bring his action against the plaintiff, the latter would then have the advantage of it; for where both are equally in fault, *potior est conditio defendentis*."

The statement that, if the enforcement of a plaintiff's claim does not require aid or proof of the illegal contract there may be a recovery (see Pitsch v. Continental & Com. Nat. Bank, 305 Ill. 265,

137 N. E. 198, 25 A. L. R. 164), is sound as a negative test; "that is, a plaintiff cannot be allowed to recover if as part of his case he is compelled to allege and prove unlawful acts or agreements, but the converse does not seem equally true. Even though his case can be made out without indicating anything unlawful, proof must be admissible to show that the plaintiff is endeavoring to enforce an obligation which is part of, or so closely connected with an unlawful plan, as to make recovery opposed to public policy. * * * and illegality if serious need not be pleaded or urged to enable the court to act upon it." 3 Williston, Contracts, § 1753, and cases cited.

The law repudiates the whole of an illegal transaction, including its consequences upon the participants therein who are in pari delicto. To award relief from part performance would be, pro tanto, recognition of the thing repudiated. The rule denying relief is therefore the only way of depriving of effect that which the law holds barren of effect. Its purpose is "to deprive the parties of all rights to have either enforcement of or relief from" their illegal agreement. 13 C. J. 496. The defendant is permitted to plead and prove illegality, not in order to aid his own case but to assist the court in ascertaining the facts so as to refuse sanction of any kind to that which the law says shall have no sanction. Woodward, Law of Quasi Contracts, § 135. In no other way could the result be made to depend upon the legal effect of the facts rather than "upon the luck or dexterity of the plaintiff" in making a selection of those few facts which would give him an apparent rather than a real right to recover; for if he may recover without disclosing illegality, he prevails because of his ability to "suppress enough facts" to conceal his own wrongdoing. 2 Page, Contracts, § 1062. The author says in that connection that "the distinction between malum prohibitum and malum in se [referred to in The St. Peter Co. v. Bunker, 5 Minn. 153 (192)] is generally repudiated at modern law." With that view this court is in accord. Holland v. Sheehan, 108 Minn. 362, 122 N. W. 1, 23 L.R.A.(N.S.) 510, 17 Ann. Cas. 687.

This is not a case where any paramount public interest is present to control decision in favor of a guilty contractor. Nor is it a case

where part of a public officer's salary has been withheld under an illegal agreement. In such a case recovery is allowed. Bowe v. City of St. Paul, 70 Minn. 341, 73 N. W. 184; Pitsch v. Continental & Com. Nat. Bank, 305 Ill. 265, 137 N. E. 198, 25 A. L. R. 164; Bodenhofer v. Hogan, 142 Iowa, 321, 120 N. W. 659, 134 A. S. R. 418, 19 Ann. Cas. 1073; 29 Cyc. 1426. Nor is there occasion to consider the rule allowing recovery upon contracts or obligations in and of themselves valid but which yet are collateral or incidental to an illegal agreement or result from it. Here the effort is to put a quasi-contractual obligation directly upon part performance of an illegal contract. For the reasons stated, my opinion is that relief should be denied plaintiff.

DIBELL, J. (dissenting).

I concur in the dissent.